1  Che Corrington, WSBA No. 54241
   che@hattislaw.com
2  HATTIS & LUKACS
   400 108th Avenue, Suite 500
3  Bellevue, WA 98004
   Telephone: 425.233.8650
4  Facsimile: 425.412.7171

5  Attorneys for Plaintiff and the Proposed Class

6

7

8              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF WASHINGTON
9

10 MARIBELL AGUILAR,                    No. _____
   for Herself, as a Private Attorney
11 General, and/or On Behalf Of All     CLASS ACTION COMPLAINT
   Others Similarly Situated,           FOR DAMAGES AND
12                                       INJUNCTIVE RELIEF UNDER
                        Plaintiff,       THE CONSUMER PROTECTION
13                                       ACT, RCW 19.86, AND FOR
        v.                               INJUNCTIVE RELIEF
14                                       UNDER THE COMMERCIAL
   CARTER'S, INC., and DOES 1-10,        ELECTRONIC MAIL ACT,
15 inclusive,                            RCW 19.190
16                      Defendants.      JURY TRIAL DEMANDED

17

18     Plaintiff MARIBELL AGUILAR, demanding trial by jury as to all issues

19 so triable, alleges as follows, on personal knowledge, investigation of her counsel,

20 and/or on information and belief, against Defendants Carter's, Inc., and Does 1

21 through 10, inclusive:

22

23

24

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 1

I. **INTRODUCTION**

1.      Carter's is a leading retailer and manufacturer of baby and young children's clothing. As alleged herein, Carter's has violated and continues to violate the Washington Consumer Protection Act, RCW 19.86, and/or the Washington Commercial Electronic Mail Act, RCW 19.190, by transmitting to Washington consumers emails which contain false or misleading information in the subject lines.

II. **PARTIES**

2.      Plaintiff Maribell Aguilar is a citizen of the United States of America and a citizen, resident and domiciliary of the State of Washington. Ms. Aguilar is an individual and a natural adult person who currently resides and who at all relevant times in the past resided in the City of Toppenish, Yakima County, Washington State.

3.      Defendant Carter's, Inc., is a corporation chartered under the laws of the State of Delaware which currently has and at all relevant times in the past has had its headquarters, executive office, principal place of business and/or nerve center in Atlanta, Georgia. Carter's, Inc., has at least eight U.S. subsidiaries.

4.      Defendant Does 1 through 10 are subsidiaries of Carter's, Inc., who actively engaged in, ratified, contributed to, aided, abetted, benefitted from, and/or are otherwise liable for the acts or omissions pled herein. It would work an injustice under these circumstances to maintain the corporate separateness of Carter's, Inc., and/or of any or all of the Doe Defendants. Based on information and belief, Carter's, Inc., so dominates the operations, strategies, revenues, and/or

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 2

costs of any or all of the Doe Defendants, such that said Doe Defendants are mere instrumentalities of Carter's, Inc. Plaintiff currently does not possess and cannot obtain the detailed company and other factual information necessary to determine which, if any, of the Doe Defendants actively engaged in, ratified, contributed to, aided, abetted, benefitted from, and/or are otherwise liable for the acts or omissions pled herein. Plaintiff will promptly engage in discovery to uncover the identity of such Doe Defendants. Upon learning the true identities of the Doe Defendants, Plaintiff anticipates either freely amending the operative complaint or requesting leave from the Court to amend the operative complaint to identify them.

5.      The words "Defendants" or "Carter's" as used throughout this pleading refers to Defendant Carter's, Inc., and/or any or all of the Doe Defendants unless context dictates otherwise.

### III.    JURISDICTION AND VENUE

6.      **Subject Matter Jurisdiction.** The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) — i.e., traditional diversity jurisdiction — because the amount in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and the matter is between citizens of different states.

7.      The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2) — i.e., Class Action Fairness Act jurisdiction — because the amount in controversy exceeds the sum or value of $5 million (exclusive of interest and costs) and is a class action in which any member of a

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

class of plaintiffs is a citizen of a state different from any defendant.

8. **Personal Jurisdiction.** This Court may exercise personal jurisdiction over each of the defendants pursuant to Washington State's long-arm statute, RCW 4.28.185. This Court may exercise personal jurisdiction over out-of-state Defendants because the claims alleged in this civil action arose from, without limitation, the transaction by Defendants of any business within the State of Washington (and/or within the Eastern District of Washington), and/or the commission by Defendants of a tortious act within the State of Washington (and/or within the Eastern District of Washington).

9. This Court may exercise personal jurisdiction over out-of-state Defendants to the fullest extent allowed under the federal due process clause. Defendants have certain minimum contacts with the State of Washington (and/or with the Eastern District of Washington) such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. As alleged in this pleading, Defendants have and continue to purposefully do some act or consummate some transaction in the State of Washington (and/or in the Eastern District of Washington), Plaintiff's claims arise from and/or are connected with said act or transaction of Defendants, and the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the State of Washington (and/or in the Eastern District of Washington), the relative convenience of the parties, the benefits and protection of laws of the State of Washington afforded the respective parties, and the basic equities of the situation.

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 4

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

10.    Carter's owns and operates about eighteen Carter's-branded retail stores in the State of Washington, including stores in Richland, Spokane and Union Gap. Carter's operates a website, www.carters.com, by which Carter's advertises and sells its goods, with said website being regularly seen by Washington and Eastern District consumers and being regularly used by Washington and Eastern District consumers to purchase goods from Carter's.

11.    **Venue.** Venue is proper in the Eastern District of Washington under 28 U.S.C. § 1391(b) because, without limitation, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Washington. For example, but without limitation, Plaintiff Aguilar was in Toppenish, Washington, when she received the Email and/or saw the subject line of the Email that Defendants transmitted to her.

12.    **Intra-District Assignment.** Plaintiff Aguilar resides in and she received the unlawful Email from Carter's in Yakima County, which is within the Yakima Division of the Eastern District of Washington.

## IV.    FACTUAL ALLEGATIONS

### A.    Carter's Is A Retailer Which Manufacturers Almost All Of Its Products.

13.    Carter's is the leading retailer and manufacturer of baby and young children's clothing in the United States with over $3 billion in annual U.S. sales. Carter's sells its apparel under the CARTER'S trademark, among other marks. According to the NPD Group, Inc., Carter's has more than three times the market share of its nearest competitor. In the baby apparel segment in particular, Carter's

has nearly five times the market share of its nearest competitor.

14.    Almost every product sold by Carter's is manufactured by Carter's in the sense that Carter's designs the product and determines how many units will be manufactured, on what schedule, and according to what specifications. While Carter's may sub-contract the physical construction of its products to third parties, Carter's is the manufacturer of almost all of its products in the sense that Carter's decides what products to make, when, where, how and in what quantities, materials, sizes and colors. When this pleading refers to Carter's as a manufacturer, it does so in this sense of overall control over the creation of its products.

15.    Approximately 50% of Carter's U.S. sales are made directly to consumers in Carter's company-owned retail stores. Carter's has approximately 734 Carter's-branded retail stores in the U.S., including 18 in the State of Washington.

16.    Approximately 10% of Carter's U.S. sales are made directly to consumers on the Carter's website at www.carters.com.

17.    Approximately 40% of Carter's revenues consist of wholesale channel sales to third-party retailers. Carter's manufactures and then sells its products at wholesale to other retailers or resellers. Thus, a consumer can purchase Carter's-branded products at Macy's, Kohl's, J.C. Penney, and other retailers (as well as from a Carter's retail store or from the Carter's website).

18.    Many products manufactured by Carter's are *only* available at Carter's company-owned retail stores or on the Carter's website, and are not also

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 6

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

available from other retailers or resellers.

**B.**     **Plaintiff Maribell Aguilar, A Yakima County Resident, Received An Email From Carter's With A Subject Line Reading: "50-70% OFF EVERYTHING".**

19.     On or about February 16, 2019, Carter's initiated the transmission of a commercial email to Plaintiff Maribell Aguilar (and to a class of Washington consumers similarly situated to Ms. Aguilar) with a subject line which read in its entirety: "50-70% OFF EVERTHING." This transmission is referred to herein as the "Email."

20.     The subject line of the Email did not contain an asterisk or other indication that the words in the subject line had a special or invented meaning.

21.     Ms. Aguilar received the Email, read the subject line of the Email and understood the words "50-70% OFF" in the subject line of the Email to mean that Carter's was offering items at prices in its retail stores and on its website which were 50% to 70% lower than Carter's own regular or prevailing prices for those items.

22.     Separately, an ordinary consumer would understand the words "50-70% OFF" in the subject line of the Email to mean that Carter's was offering items at prices that were 50% to 70% lower than Carter's own regular or prevailing prices for those items.

23.     Ms. Aguilar received the Email, read the subject line of the Email and understood the word "EVERYTHING" in the subject line of the Email to mean that Carter's was offering discounts on all of its products.

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 7

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

24.     Separately, an ordinary consumer would understand the word "EVERYTHING" in the subject line of the Email to mean that Carter's was offering discounts on all of its products.

25.     Relying on Carter's representation of "50-70% OFF EVERTHING" in the subject line of the Email, Ms. Aguilar believed that Carter's was holding a sale at its retail stores and website at which Ms. Aguilar would receive a discount of 50% to 70% off Carter's regular or prevailing prices for all of its products. In response to Carter's representations in the subject line in this February 16, 2019, Email, Ms. Aguilar visited and made purchases on February 19, 2019, at the Carter's retail store located at 1602 E. Washington Avenue, Union Gap, Washington. Ms. Aguilar did not receive the actual discounts she was promised in the Email subject line, and which she had reasonably expected, because in fact the representations of the discounts were false.

**C.     The Subject Line Reading "50-70% OFF EVERYTHING" Is False Or Misleading.**

26.     In violation of Washington State law, the Email's subject line of "50-70% OFF EVERTHING" contains false or misleading information. The words "50-70% OFF" contain false or misleading information, the word "EVERYTHING" contains false or misleading information, and/or the entire subject line of "50-70% OFF EVERYTHING" contains false or misleading information. (This pleading will refer to the terms "50-70% OFF" as "words," even though, strictly speaking, the terms are a combination of numbers, typographic symbols and one word.)

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 8

### 1.    "50-70% OFF" is False or Misleading.

27.    **First**, the words "50-70% OFF" are false or misleading because Ms. Aguilar and the ordinary consumer read and understood those words to mean a discount from Carter's regular or prevailing price. However, the discounts were actually reductions from Carter's Manufacturer's Suggested Retail Price ("MSRP"), and there was nothing in the Email subject line (such as an asterisk) which communicated to Ms. Aguilar or an ordinary consumer that the advertised discounts were reductions from something other than Carter's regular or prevailing price.

28.    **Second**, the words "50-70% OFF" are false or misleading because, if an ordinary consumer read or understood those words to mean a discount from MSRP, an ordinary consumer would assume that the MSRP was set by the market or by a bona fide third-party manufacturer in good faith. However, Carter's is the manufacturer, and Carter's intentionally sets the MSRP at an inflated dollar amount which Carter's knows with certainty is grossly above the true market price for the product. Meanwhile, Carter's policy, as the manufacturer, is to give each product a price tag with this self-created, inflated MSRP which is the same regardless of whether the product is offered direct by Carter's in its stores or on its website, or offered by its resellers.

29.    **Third**, the words "50-70% OFF" are false or misleading because, if an ordinary consumer understood the discounts to be reductions from Carter's self-created MSRP, the discounts are false or misleading for the simple reason that Carter's has a policy of rarely if ever offering its products in its retail stores

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 9

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

or on its website at the purported MSRP.

30.    Carter's policy and practice is to perpetually offer all of its products, whether online or in-store, at a price at least 35% less (and usually between 40% to 70% less) than its self-created MSRP. Meanwhile, based on investigation of Plaintiff's counsel and on information and belief, Carter's online and in-store sales prices and purported discounts are, by the company's own design, in substantial parity with one another for those products that are offered through both markets/channels.

31.    In other words, Carter's has a policy and practice of not following its own "suggested" retail price, because Carter's, as both the manufacturer and the retailer, intentionally inflates the MSRP for the purpose of deceiving consumers into believing they are receiving a significant discount in order to induce consumers to purchase its products.

32.    **Fourth**, the words "50-70% OFF" are false or misleading because, on the rare occasions when Carter's offers an item at the MSRP, the item is offered in bad faith to artificially "establish" a price from which discounts are created and advertised. On information and belief, Carter's primary intent is to artificially establish the MSRP for the purpose of exculpating itself from legal liability for its pricing fraud, while at the same time cleverly ensuring that few if any products are actually purchased by its customers at MSRP.

33.    The indicia of bad faith on the part of Carter's include, without limitation, that: (1) Carter's only, if ever, offers an item at MSRP on its website (and *only* on its website) for at most a couple of weeks during an initial period;

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 10

(2) Carter's has a policy to never or virtually never offer an item at MSRP in its retail stores (where over 80% of Carter's direct sales occur); (3) if and when Carter's offers an item at MSRP (only) on its website during such an initial period, Carter's intentionally hides and buries the product on its website during this time, purposefully making it very difficult for the ordinary website user to find any such products being offered or sold at MSRP; (4) Carter's intentionally engages in these practices in order to ensure its customers purchase few if any of its products at MSRP; and/or (5) as a result, customers in fact purchase few if any products from Carter's at MSRP.

34.    **Fifth**, the words "50-70% OFF" are also false or misleading because Carter's resellers, e.g., third-party retailers such as Macy's, Kohl's, and J.C. Penney, likewise rarely if ever offer or sell the products at Carter's MSRP.

35.    Phrased differently, Carter's cannot claim that its self-created MSRP is a market price. Based on investigation of Plaintiff's counsel, none of the major retailers in the children's apparel market regularly offers or sells Carter's products at Carter's self-created MSRP. (The conduct of the Carter's resellers is logical; if the resellers offered or sold in good faith the Carter's products at the MSRP, then the resellers would be perpetually undercut and would lose sales to Carter's, whose own 734 retail stores and website have a policy and practice of consistently offering the products for greater than 35% below MSRP.)

36.    Below is an example which demonstrates how Carter's products are typically offered in the consumer marketplace, by both Carter's itself, and by Carter's resellers, at a similar (and significant) discount to the inflated and

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 11

1  fictional MSRP provided by Carter's. The screenshots below were taken on April

2  22, 2019, of the identical Carter's-branded Floral Jumpsuit/Coverall ("Jumpsuit")

3  available direct from Carter's (see the first screenshot), and also from Carter's

4  resellers Kohl's (see the second screenshot) and Macy's (see the third

5  screenshot):



CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 12

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com







CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 13

37.     The MSRP or reference price was $20.00 at all three retailers, which reflects Carter's policy, as the manufacturer, to give each product a price tag with an MSRP which is the same regardless of whether the product is offered direct by Carter's in its stores or website, or by its resellers.

38.     All three retailers offered the Jumpsuit for between $8.00 and $9.99 on this day, at a supposed "discount" of at least 50% from the MSRP or reference price. Based on investigation of Plaintiff's counsel, all three retailers used and continue to use the Carter's-provided MSRP as the advertised reference price for virtually all Carter's-branded products, and all three retailers consistently offer Carter's-branded products at a perpetual "discount" of between 40% to 70% from Carter's inflated and fictional MSRP.

39.     Carter's is fully aware, expects, and/or intends that its resellers virtually never offer Carter's products at MSRP, and that its resellers instead perpetually offer Carter's products at a "discount" of 40% to 70% from the inflated and fictional MSRP.

40.     **In sum**, neither Ms. Aguilar nor an ordinary Washington consumer did or would understand the words "50-70% OFF" in the Email's subject line to refer to a discount from a self-created MSRP which Carter's created in bad faith and which neither Carter's nor its resellers treat as a real, bona fide price.

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## 2.    "EVERYTHING" is False or Misleading.

41.    The information in the subject line of the Email reading "EVERYTHING" is also false or misleading.

42.    Ms. Aguilar understood the word "EVERYTHING" to mean that Carter's was offering discounts on all of its products in its stores and on its website.

43.    Separately, an ordinary consumer would understand the word "EVERYTHING" to mean that Carter's was offering discounts on all of its products.

44.    In reality, Carter's was not offering discounts on all of its products. Carter's excluded many products from the sale advertised in the Email subject line. At least 500 items were excluded from the sale advertised in the Email subject line and potentially upward of 1,700 items were excluded. But there is nothing in the Email's subject line (such as an asterisk) to warn consumers that Carter's had assigned a special or invented meaning to the word "EVERYTHING".

### D.    Carter's Has Violated The Law, And Continues To Violate The Law, With Regard To A Class Of Washington Consumers.

45.    Ms. Aguilar is not alone. Carter's transmitted the Email with the unlawful subject line, as well as many other emails with similarly false or misleading subject lines, to thousands, perhaps tens of thousands, of persons in Washington State. A principal intention of Carter's in using the false and misleading subject lines in such emails was to trick the email recipients into

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 15

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1  falsely believing that Carter's was holding a big sale (e.g., "50-70% OFF

2  EVERYTHING") with significant discounts from its normal prices, and to

3  thereby induce the email recipients to purchase products from Carter's stores or

4  the Carter's website.

5       46.    These recipients comprise a certifiable class, are persons whom Ms.

6  Aguilar seeks to represent in this class action, and are persons who are each

7  entitled to damages for each unlawful email Carter's transmitted to them.

8       47.    Plaintiff's counsel has conducted an extensive investigation into

9  Carter's misconduct and bases the allegations of this pleading upon, among other

10  things, the findings of the investigation.

11       48.    Plaintiff's counsel has been monitoring Carter's website since

12  October 15, 2015. Plaintiff's counsel has assembled a comprehensive historical

13  database of daily prices and screenshots of approximately 900,000 daily offerings

14  for thousands of products over these 1,293 days.

15       49.    The data demonstrates that Carter's rarely if ever offered products at

16  a price which would render the "50-70% OFF" language accurate.

17       50.    Based on investigation and on information and belief, the Email of

18  February 16, 2019, is not the only time that Carter's included a false or

19  misleading "percentage off" statement (or similar statement) in the subject line of

20  a commercial email message sent to Ms. Aguilar or to other Washington

21  consumers; in fact, it is common for Carter's to transmit emails to Washington

22  residents with subject lines similar to the Email's subject line.

23       51.    Based on investigation and on information and belief, Carter's

24

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 16

continues to transmit (and, absent an injunction, will continue to transmit) commercial email messages to Washington consumers which contain false or misleading "percentage off" statements (or similar statements) in the subject line.

52.    Based on investigation and on information and belief, the Email of February 16, 2019, is not the only time that Carter's included a false or misleading "everything" statement or similar wording in the subject line of a commercial email message sent to Ms. Aguilar or to other Washington consumers.

53.    Based on investigation and on information and belief, Carter's continues to transmit (and, absent an injunction, will continue to transmit) commercial email messages to Washington consumers which contain false or misleading "everything" statements (or similar statements) in the subject line.

54.    The nature of Carter's misconduct is non-obvious and/or obscured from public view, and neither Plaintiff nor the members of the putative class could have, through the use of reasonable diligence, learned of the accrual of her and their claims against Carter's at an earlier time. This Court should, at the appropriate time, apply the discovery rule to extend the applicable limitations period (and the corresponding class period) to the date on which Carter's commenced transmitting emails which violated the Washington Consumer Protection Act or the Washington Commercial Electronic Communication Act in the manner described herein even if such a date is beyond the statutory limitations period otherwise applied to such claims.

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## V.    **CLASS ACTION ALLEGATIONS**

55.    Plaintiff Aguilar brings this class-action lawsuit on behalf of herself and on behalf of the members of the following class (the "Class"):

> **All residents of the State of Washington who, within the applicable limitations period, received an email from Carter's that contained: (a) a percentage off statement (or similar statement) in the subject line; and/or (b) the word "everything" or a similar term in the subject line when one or more products were excluded from the discount.**

56.    Specifically excluded from the Class are each defendant, any entity in which a defendant has a controlling interest or which has a controlling interest in a defendant, a defendant's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

57.    ***Numerosity.*** Plaintiff does not know the exact number of Class members but is informed and believes that the Class easily comprises 5,000 Washington State residents and could, by the date of entry of Judgment, number in excess of 20,000 Washington State residents. As such, Class members are so numerous that joinder of all members is impracticable.

58.    ***Commonality and Predominance.*** Well-defined, nearly identical legal or factual questions affect the members of the Class. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 18

a.      The subject line and contents of Carter's promotional emails sent to residents of the State of Washington;

b.      Carter's policies and actions regarding the subject line and contents of its promotional emails;

c.      The accuracy of the information in the subject line of Carter's promotional emails;

d.      Whether the pled conduct of Carter's is injurious to the public interest;

e.      Whether Carter's should be ordered to pay statutory damages; and/or

f.      Whether Carter's should be enjoined from further engaging in the misconduct alleged herein.

59.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the class.

60.    The party opposing the Class has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

61.    *Typicality.* Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all received emails from Carter's with false or misleading information in the subject line. Plaintiff and Class members all received emails from Carter's with false or misleading information in the subject

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 19

line regarding the manner in which purported percentage off discounts were calculated and/or whether the purported discounts applied to all of Carter's products.

62.    **_Adequacy._** Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests. Plaintiff has retained counsel who has considerable experience and success in prosecuting complex class action and consumer protection cases.

63.    **_Superiority._** A class action is the superior method for fairly and efficiently adjudicating this controversy for the following reasons, without limitation:

a.    Class members' interests are relatively small compared to the burden and expense required to litigate each of their claims individually, so it would be impracticable for Class members to seek individual redress for each defendant's illegal and deceptive conduct;

b.    Even if Class members could afford individual litigation, the court system could not. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court; and

c.    Plaintiff anticipates no unusual difficulties in managing this class action.

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1

## CLAIMS

2

### COUNT I
**Violation of the Washington Consumer Protection Act**
**(RCW Chapter 19.86)**
**(For Damages and All Other Available Relief)**
**AGAINST ALL DEFENDANTS**

3

4

5

6      64.    Plaintiff realleges and incorporates by reference all paragraphs

7  alleged hereinbefore.

8      65.    Plaintiff Aguilar pleads this count in three separate capacities: in her

9  individual capacity, as a private attorney general seeking the imposition of public

10  injunctive relief, and/or as a putative class representative serving on behalf of all

11  others similarly situated.

12      66.    The Washington Consumer Protection Act (the "CPA"), RCW

13  19.86, was first enacted in 1961 and is Washington's principal consumer

14  protection statute. The CPA "replaces the now largely discarded standard of

15  *caveat emptor* with a standard of fair and honest dealing." Washington Pattern

16  Jury Instruction Civil No. 310.00 (Consumer Protection Act — Introduction).

17      67.    The CPA's primary substantive provision declares unfair methods of

18  competition and unfair or deceptive acts or practices to be unlawful. RCW

19  19.86.020. "Private rights of action may now be maintained for recovery of actual

20  damages, costs, and a reasonable attorney's fee. RCW 19.86.090. A private

21  plaintiff may be eligible for treble damages . . . .  Private consumers may obtain

22  injunctive relief, even if the injunction would not directly affect the individual's

23  own rights. RCW 19.86.090." Washington Pattern Jury Instruction Civil No.

24

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 21

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

310.00 (Consumer Protection Act — Introduction).

68.    The CPA recognizes and incorporates *per se* violations. The Washington Legislature routinely prohibits certain specified conduct but, instead of creating a new and independent private right of action to enforce the prohibition, the Legislature deems the unlawful conduct to be a *per se* violation of the CPA. If a defendant engages in that unlawful conduct, a plaintiff may file a CPA complaint alleging the *per se* violation and seek the remedies available under the CPA and also cumulatively seek the remedies available under the statute which forbids the *per se* violation. *See* Washington Pattern Jury Instruction Civil No. 310.03 (*Per Se* Violation of Consumer Protection Act) and Appendix H (Consumer Protection Act *Per Se* Violations).

69.    A plaintiff can plead a violation of the Washington Consumer Protection Act by pleading that the CPA was violated *per se* due to a violation of the Washington Commercial Electronic Mail Act. *See* RCW 19.190.030(1)(b) ("It is a violation of the consumer protection act, chapter 19.86 RCW . . . to initiate the transmission of a commercial electronic mail message that . . . [c]ontains false or misleading information in the subject line."); Washington Statutes of 1998, chapter 149, § 4 (approved by Governor on March 25, 1998).

70.    The Washington Commercial Electronic Mail Act ("CEMA") prohibits a person from initiating the transmission of a commercial electronic mail message to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that contains false or misleading information in the subject line. RCW 19.190.020(1)(b).

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

71.     A plaintiff who successfully pleads and proves a CEMA violation as a *per se* violation of the CPA may recover the remedies available under the CPA (e.g., actual damages, increased damages of up to treble actual damages (subject to a statutory maximum), injunctive relief, attorneys' fees and costs (RCW 19.86.090)) and also cumulatively the remedies available under CEMA (e.g., statutory damages of $500 per email sent in violation of CEMA, or actual damages, whichever is greater; and injunctive relief (RCW 19.190.040, RCW 19.190.090)).

72.     On or about February 16, 2019, Defendants initiated the transmission of a commercial electronic mail message to Plaintiff Aguilar (the "Email"). The Email was an electronic mail message, in that it was an electronic message sent to an electronic mail address; the Email from Defendants also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

73.     Defendants sent the Email for the purpose of promoting goods or services for sale or lease. Defendants were the original sender of the Email.

74.     Plaintiff Aguilar received the Email at her electronic mail address, which is the destination, commonly expressed as a string of characters, at which she receives and to which electronic mail may be sent or delivered.

75.     Defendants initiated the transmission of the Email to Ms. Aguilar's electronic mail address, which was an electronic mail address that Defendants knew, or had reason to know, was held by a Washington State resident, i.e., Ms. Aguilar.

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 23

1    76.    Ms. Aguilar was the recipient of the Email.

2    77.    At all relevant times, Defendants knew that the intended recipient

3    (Ms. Aguilar) was a resident of the State of Washington because, without

4    limitation, Defendants possessed actual knowledge of Ms. Aguilar's state of

5    residence, Defendants possessed constructive knowledge of Ms. Aguilar's state of

6    residence, information was available to Defendants upon request from the

7    registrant of the internet domain name contained in the recipient's electronic mail

8    address, and/or Defendants otherwise knew or should have known or had reason

9    to know that Ms. Aguilar was a resident of the State of Washington.

10    78.    The subject line of the Email read in its entirety: "50-70% OFF

11    EVERYTHING". The subject line did not contain an asterisk or other indication

12    that the words in the subject line had a special or invented meaning.

13    79.    In violation of the Washington Consumer Protection Act (as based

14    *per se* upon a violation of the Washington Commercial Electronic Mail Act) and

15    for the reasons alleged hereinabove, the subject line "50-70% OFF

16    EVERTHING" contained false or misleading information.

17    80.    Generally, a plaintiff pleading a claim under the Washington

18    Consumer Protection Act must plead five necessary elements: (1) an unfair or

19    deceptive act or practice (2) in trade or commerce (3) that affects the public

20    interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright*

21    *v. Lyft, Inc.*, 189 Wash.2d 718, 728 (2017). Because Plaintiff alleges a *per se* CPA

22    violation by alleging a CEMA violation, all or some of these five elements are, as

23    elaborated below, deemed to be satisfied and/or nullified as a matter of law.

24

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 24

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1   *Wright v. Lyft, Inc.*, 189 Wash.2d 718, 724 (2017). However, Plaintiff can and

2   hereby does adequately plead every element of this CPA claim even if the

3   elements were not deemed to be satisfied and/or nullified as a matter of law.

4       81.    **CPA Element 1: "An Unfair Or Deceptive Act Or Practice."** The

5   existence of an unfair or deceptive act or practice (CPA element 1) is deemed to

6   be satisfied by the pleading of a CEMA violation as a *per se* violation of the CPA.

7   *Wright v. Lyft, Inc.*, 189 Wash.2d 718, 724 (2017) ("The statute also established

8   the first three elements of a CPA claim (1) unfair or deceptive act (2) occurring in

9   trade or commerce that affects (3) the public interest . . . .").

10      82.    In the alternative and/or separately, Defendants' misconduct as

11  alleged herein constitutes an unfair or deceptive act or practice (CPA element 1)

12  because the information in the subject line of the Email had a tendency or

13  capacity to mislead or deceive a substantial portion of the public.

14      83.    **CPA Element 2: "In Trade Or Commerce."** The existence of an

15  unfair or deceptive act or practice occurring in trade or commerce (CPA element

16  2) is deemed to be satisfied by the pleading of a CEMA violation as a *per se*

17  violation of the CPA. *Wright v. Lyft, Inc.*, 189 Wash.2d 718, 724 (2017) ("The

18  statute also established the first three elements of a CPA claim (1) unfair or

19  deceptive act (2) occurring in trade or commerce that affects (3) the public

20  interest . . . .").

21      84.    In the alternative and/or separately, Defendants' misconduct as

22  alleged herein occurred in the conduct of trade or commerce (CPA element 2)

23  because Defendants sold or offered for sale the relevant goods in the State of

24

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 25

Washington or to persons in Washington and/or in engaged in commerce directly or indirectly affecting the people of the State of Washington.

85.    **CPA Element 3: "That Affects The Public Interest."** The existence of the public interest element (CPA element 1) is deemed to be satisfied by the pleading of a CEMA violation as a *per se* violation of the CPA. *Wright v. Lyft, Inc.*, 189 Wash.2d 718, 724 (2017) ("The statute also established the first three elements of a CPA claim (1) unfair or deceptive act (2) occurring in trade or commerce that affects (3) the public interest . . . .").

86.    In the alternative and/or separately, Defendants' misconduct alleged herein is injurious to the public interest (CPA element 3) in that the misconduct: (1) violates a statute (specifically, the Washington Commercial Electronic Communications Act, RCW 19.190) which incorporates the Washington Consumer Protection Act (RCW Chapter 19.86) (with said incorporation being codified at, without limitation, RCW 19.190.030(1) and RCW 19.190.100); (2) violates a statute that contains a specific legislative declaration of public interest impact (e.g., RCW 19.190.030(3) and RCW 19.190.100); (3) injured other persons (e.g., the other members of the Class); (4) had the capacity to injure other persons (e.g., the other members of the Class); and/or (5) has the capacity to injure other persons (e.g., the other members of the Class).

87.    **CPA Element 4: "Injury To Plaintiff's Business And Property."** The existence of the element of injury to business or property (CPA element 4) is deemed as a matter of law to be satisfied by and/or to be nullified by CEMA. *See Wright v. Lyft, Inc.*, 189 Wash.2d 718, 729 (2017) ("RCW 19.190.040 — the

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 26

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

provision does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original); *Gragg v. Orange Cab Co., Inc.*, 145 F.Supp. 3d 1046, 1053 (W.D. Wash. 2015) (Lasnik, J.) ("the only way to give effect to the legislature's stated intent is to construe the liquidated damages provision [of CEMA] as establishing the injury and causation elements of a CPA claim").

88.    In the alternative and/or separately with regard to injury to Plaintiff's business or property (CPA element 4), Ms. Aguilar was injured (and/or members of the Class were injured) by the loss of the time she spent reviewing the subject line of the Email, opening and looking at the Email, and/or investigating the claims made in the Email. Ms. Aguilar was injured (and/or members of the Class were injured) in that the subject line of the Email created an expectancy that she would receive a discount of 50% to 70% off of the regular or prevailing price of every Carter's product, but she did not receive that expectancy when she purchased from Carter's in response to the subject line. Ms. Aguilar was injured (and/or members of the Class were injured) because the false or deceptive subject line of the email caused Ms. Aguilar to buy more than she otherwise would have bought and to pay more than she otherwise would have paid. Ms. Aguilar was injured (and/or members of the Class were injured) because the products she purchased in response to the Email were not in fact worth the amount that Defendants represented to her. Ms. Aguilar was also injured (and/or members of the Class were also injured) in that the Email used resources on her electronic device and in her home, utilized memory on her electronic device and/or email

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

service, depleted battery power from the electronic device, consumed electricity used to re-charge the device after Email-caused depletion, and/or caused wear and tear on her device, router, wires and/or other equipment. (Ms. Aguilar is not alleging that Defendants injured her physically or emotionally.)

89.    **CPA Element 5: "Causation."** The existence of causation (CPA element 5) is deemed as a matter of law to be satisfied by and/or to be nullified by CEMA. *See Wright v. Lyft, Inc.*, 189 Wash.2d 718, 729 (2017) ("RCW 19.190.040 — the provision does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original); *Gragg v. Orange Cab Co., Inc.*, 145 F.Supp. 3d 1046, 1053 (W.D. Wash. 2015) (Lasnik, J.) ("the only way to give effect to the legislature's stated intent is to construe the liquidated damages provision [of CEMA] as establishing the injury and causation elements of a CPA claim").

90.    In the alternative and/or separately with regard to causation (CPA element 5), the false or misleading information in the subject line of the Email was a cause in direct sequence (unbroken by any new independent cause) which produced each injury complained of and without which such injury would not have happened. But for Defendants' transmitting to Ms. Aguilar the Email with the false or misleading information in the subject line, Ms. Aguilar would not have been injured in the manner alleged herein.

91.    Defendants' misconduct as alleged herein was not performed in good faith. Defendants' misconduct as alleged herein was not reasonable in relation to the development and preservation of business.

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 28

92.     The balance of the equities favors the entry of permanent injunctive relief against Defendants. Plaintiff, the members of the Class and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendants. Plaintiff, the members of the Class and the general public lack an adequate remedy at law. A permanent injunction against Defendants is in the public interest. Defendants' unlawful behavior is, based on information and belief, ongoing as of the date of the filing of this pleading; absent the entry of a permanent injunction, Defendants' unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

## COUNT II
**Violation of the Washington Commercial Electronic Mail Act
RCW Chapter 19.190
(Injunctive and Related Relief Only—No Damages Sought)
AGAINST ALL DEFENDANTS**

93.     Plaintiff realleges and incorporates by reference all paragraphs alleged hereinbefore.

94.     Plaintiff Aguilar pleads this count in three separate capacities: in her individual capacity, as a private attorney general seeking the imposition of public injunctive relief and/or as a putative class representative serving on behalf of all others similarly situated.

95.     The Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, creates an independent but limited private of right of action which can be asserted by, among others, a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

subject line. RCW 19.190.030(1)(b). A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1).

96.    It is Plaintiff's intent in this count to plead an independent CEMA cause of action only to the limited extent that it is recognized by law, e.g., when a plaintiff seeks injunctive relief but not damages. *Wright v. Lyft, Inc.*, 189 Wash.2d 718, 728 n. 3 (2017) ("we note that a plaintiff may bring an action to enjoin any CEMA violation"); *Gragg v. Orange Cab Co.*, 145 F. Supp.3d 1046, 1052 (W.D. Wash. 2015).)

97.    On or about February 16, 2019, Defendants initiated the transmission of a commercial electronic mail message to Plaintiff Aguilar (the "Email"). The Email was an electronic mail message, in that it was an electronic message sent to an electronic mail address; the Email from Defendants also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

98.    Defendants sent the Email for the purpose of promoting goods or services for sale or lease. Defendants were the original sender of the Email.

99.    Plaintiff Aguilar received the Email at her electronic mail address, which is the destination, commonly expressed as a string of characters, at which she receives and to which electronic mail may be sent or delivered.

100.    Defendants initiated the transmission of the Email to Ms. Aguilar's electronic mail address, which was an electronic mail address that Defendants knew, or had reason to know, was held by a Washington State resident, i.e., Ms.

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1  Aguilar.

2       101.  Ms. Aguilar was the recipient of the Email.

3       102.  At all relevant times, Defendants knew that the intended recipient

4  (Ms. Aguilar) was a resident of the State of Washington because, without

5  limitation, Defendants possessed actual knowledge of Ms. Aguilar's state of

6  residence, Defendants possessed constructive knowledge of Ms. Aguilar's state of

7  residence, information was available to Defendants upon request from the

8  registrant of the internet domain name contained in the recipient's electronic mail

9  address, and/or Defendants otherwise knew or should have known or had reason

10  to know that Ms. Aguilar was a resident of the State of Washington.

11       103.  The subject line of the Email read in its entirety: "50-70% OFF

12  EVERYTHING". The subject line did not contain an asterisk or other indication

13  that the words in the subject line had a special or invented meaning.

14       104.  In violation of the Washington Commercial Electronic Mail Act and

15  for the reasons alleged hereinabove, the subject line "50-70% OFF

16  EVERTHING" contained false or misleading information.

17       105.  The balance of the equities favors the entry of permanent injunctive

18  relief against Defendants. Plaintiff, the members of the Class and the general

19  public will be irreparably harmed absent the entry of permanent injunctive relief

20  against Defendants. Plaintiff, the members of the Class and the general public

21  lack an adequate remedy at law. A permanent injunction against Defendants is in

22  the public interest. Defendants' unlawful behavior is, based on information and

23  belief, ongoing as of the date of the filing of this pleading; absent the entry of a

24

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 31

permanent injunction, Defendants' unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

## **PRAYER FOR RELIEF**

Plaintiff MARIBELL AGUILAR, on behalf of herself individually, as a private attorney general and/or on behalf of the Class of all others similarly situated hereby respectfully requests that this Court order relief and enter judgment against Defendant Carter's, Inc., and/or Defendants Does 1 through 10, inclusive, individually and/or jointly and/or severally and/or as otherwise appropriate, as follows:

### **As To The First Claim (Violation of the Washington Consumer Protection Act):**

1.      For an order certifying the proposed Class and appointing Plaintiff and her counsel to represent the Class;

2.      For actual damages pursuant to, without limitation, RCW 19.86.090;

3.      For an increase in the award of actual damages of up to treble the actual damages (up to the statutory maximum of $25,000 to be awarded to Plaintiff and to each member of the Class for each instance in which Defendants initiated the transmission of a commercial electronic mail message which was received by a Washington resident and which contained false or misleading information in the subject line) pursuant to, without limitation, RCW 19.86.090;

4.      For damages which are the greater of (a) the actual damages incurred by Plaintiff and each member of the Class or (b) the statutory damages of $500 to

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 32

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

be awarded to Plaintiff and to each member of the Class for each instance in which Defendants initiated the transmission of a commercial electronic mail message which was received by a Washington resident and which contained false or misleading information in the subject line (an amount of statutory damages which will be proven at trial but which Plaintiff estimates will be at least $10 million per violative email) pursuant to, without limitation, RCW 19.190.040;

5.    For nominal damages;

6.    For an order that Defendants be permanently enjoined from the unlawful conduct alleged herein pursuant to, without limitation, RCW 19.86.090;

**As To The Second Claim (Violation of the Washington Commercial Electronic Mail Act):**

7.    For an order certifying the proposed Class and appointing Plaintiff and her counsel to represent the Class;

8.    For an order that Defendants be permanently enjoined from the unlawful conduct alleged herein pursuant to, without limitation, RCW 19.190.090(1);

**As To Each And Every Claim:**

9.    For an order certifying the proposed Class and appointing Plaintiff and her counsel to represent the Class;

10.    For an order that Defendants be permanently enjoined from the unlawful conduct alleged herein;

11.    For an order that the Court retain jurisdiction to police Defendants' compliance with the permanent injunctive relief;

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 33

1    12.    For pre-judgment and/or post-judgment interest to the extent allowed

2  by law;

3    13.    For attorneys' fees to the extent allowed by law;

4    14.    For costs to the extent allowed by law; and/or

5    15.    For any other relief the Court deems just and proper, including,

6  without limitation, temporary, preliminary and/or permanent injunctive relief.

7

8  ## JURY DEMAND

9  Plaintiff Maribell Aguilar demands trial by jury on all issues so triable.

10

DATED this 29th day of April, 2019.

11

Presented by:

12

HATTIS & LUKACS

13

14  By: _Che Corrington_

15  Che Corrington

16  Che Corrington, WSBA No. 54241
che@hattislaw.com

17  HATTIS & LUKACS
400 108th Avenue, Suite 500

18  Bellevue, WA 98004
Tel: 425.233.8650

19  Fax: 425.412.7171
www.hattislaw.com

20

21  Attorneys for Plaintiff Maribell Aguilar
and the Proposed Class

22

23

24

CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF- 34